## UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSIE S. LIRA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:16-cv-01030-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 14, 15) |

## I.

## INTRODUCTION

Plaintiff Jessie S. Lira ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for a period of disability and disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from major depressive disorder and panic disorder with agoraphobia. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 7, 8.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on June 21, 2012. (AR 174-77.) Plaintiff's applications were initially denied on October 22, 2012, and denied upon reconsideration on June 20, 2013. (AR 73-115.) Plaintiff requested and received a hearing before Administrative Law Judge Cynthia Floyd ("the ALJ"). Plaintiff appeared for a hearing on October 14, 2014. (AR 28-71.) On January 30, 2015, the ALJ found that Plaintiff was not disabled. (AR 9-23.) The Appeals Council denied Plaintiff's request for review on May 16, 2016. (AR 1-5.)

### A. Hearing Testimony

Plaintiff testified at the October 14, 2014 hearing. She was 58 years old at the time of the hearing. (AR 34.) She was living with her daughter, her daughter's boyfriend, and her granddaughter in a duplex in Fresno. (AR 34-36.) She sometimes goes to the apartment she has with her husband when he is not there, but then she goes back to her daughter's place. (AR 36.) One of the reasons that Plaintiff and her husband are separated is that she cannot remember things. (AR 39.) She does not have any pets. (AR 36.) She completed high school and has not had any vocational training. (AR 40-41.)

She does not have any sources of income and the only public benefits she receives are food stamps. (AR 36.) She has bills to pay, but she is unable to pay them because she does not have any money. (AR 37.) Plaintiff's daughter's boyfriend supports the household. (AR 37.) Plaintiff's husband also works. (AR 37.) Plaintiff received state disability benefits approximately three to four years prior to the hearing because she could not go back to work due to her depression. (AR 38.) She indicated that she was not sure if the disability benefits were the same as unemployment. (AR 39.) She had applied for and received unemployment benefits after she received state disability benefits. (AR 47.) She did not receive worker's compensation. (AR 38.) She has not received any money from a private disability insurance policy or a

---

[2] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record). Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript. (See ECF No. 9.)

2

retirement plan.  (AR 39.)  She was looking for work while she was receiving unemployment benefits because she had to in order to receive the benefits.  (AR 47-48.)  She applied for sales jobs, but she could not make it to the interview process.  (AR 48.)  She would not have accepted a job offer if it would have been extended because she could not go into a store alone and she would get emotionally upset.  (AR 48.)  Her daughter would take her to town so she could get used to being in crowds and around people, but she could not do it.  (AR 48.)

She last worked on March 23, 2010, as a branch manager at JP Morgan Chase Bank. (AR 42.)  She had been the branch manager there for ten years.  (AR 42.)  She had supervised staff and did some lending and sales, but she was not doing loans at the time she left the bank. (AR 42-43.)  She lifted, carried, pushed, or pulled between ten and twenty pounds.  (AR 43-44.) She had previously worked at Washington Mutual Bank as a branch manager.  (AR 44.)  She supervised the employees, did sales, and processed loans.  (AR 44.)  She lifted and carried about five to ten pounds.  (AR 44-45.)  She worked at Nationwide Credit in 2000 as a collection manager overseeing staff to make sure they were properly collecting and using proper phone etiquette.  (AR 45.)  She worked for Wells Fargo Bank from 1976 to 1999.  (AR 45-46.)

During a typical day, she wakes up around 10:00 a.m. or 11:00 a.m.  (AR 57.)  She sits in the house in the dark because the dark makes her feel protected.  (AR 57-58, 68.)  However, when Plaintiff's daughter gets home or stops by the house that Plaintiff has with her husband, Plaintiff's daughter opens the curtains and windows.  (AR 69.)  Plaintiff cannot cook alone anymore because there were two times she almost caused a fire when she forgot that she was cooking.  (AR 58.)  However, she sometimes cooks with her daughter.  (AR 68.)  She used to do all the cleaning and vacuuming, but now she does not do it.  (AR 59.)  She does not watch TV or listen to the radio because she likes silence.  (AR 59-60, 67.)  She uses an iPad to play a game and go on Facebook.  (AR 60.)  She prays a lot and she goes to the cemetery to visit her mother's grave.  (AR 60-61.)  She does not see her friends anymore.  (AR 61.)  She plays with her two year old granddaughter and takes her on walks in the parking lot of the complex.  (AR 59.)  She gives her granddaughter crackers and juice.  (AR 59.)

She currently has a valid driver's license with no restrictions on it, but it was suspended

or revoked a year before the hearing because she did not have the money to pay the insurance or she forgot to pay it. (AR 39-40.) She drives back and forth between her daughter's place and the apartment that her husband is living in approximately four times a week. (AR 40.) Plaintiff only goes out of the house alone when she goes to her other house or to her daughter's house. (AR 67.) Plaintiff's daughter takes Plaintiff to see Plaintiff's sister in Columbus, to the grocery store, and to Plaintiff's doctors' appointments. (AR 40.) Whenever Plaintiff goes to stores and places in town, she feels like she cannot breathe and she starts sweating. (AR 55-56.) She estimates that she goes out two times a week. (AR 56.) When Plaintiff went with her daughter and sister to her sister's dentist appointment, she felt like she was going to pass out in the waiting room because there were three people there and she went to the car. (AR 54.) Her stomach was upset all day and she was sweating and crying. (AR 55.) When she went to restaurants, she asked to be sat her away from other people and near the restroom. (AR 68-69.) She has had four accidents where she could not make it to the restroom. (AR 69.)

She cannot work because she gets anxious, she cannot breathe, and she starts sweating so much that her whole back gets wet. (AR 48.) The anxiety causes her to get sick to her stomach to the point that she has to go to the bathroom four or five times. (AR 48-49.) She cannot concentrate and follow simple directions. (AR 50.) Her anxiety has caused her to have a rash all over her body in the heat. (AR 69.) She has received medication for the rash, but it is not working, and she has been told to see a dermatologist. (AR 69-70.)

Her mental problems are the result of her supervisor at Chase humiliating and demeaning her in front of staff and customers. (AR 50-51.) Plaintiff went to Human Resources, but her supervisor denied saying anything demeaning and humiliating about Plaintiff. (AR 52-53.) Plaintiff went on sick leave and eventually was laid off because they had to place someone in her position. (AR 53.)

She receives treatment for her anxiety and mental status from Dr. Sana[3], who evaluates her and gives her Effexor. (AR 49.) She had previously received mental healthcare from Ms.

---

[3] Plaintiff may have meant Dr. Mary Sadlek.

Etrum, Dr. George, Dr. Alimasuya, Dr. Sandler, Dr. Rowell, and Arlena Couston. (AR 54.) The medication helps her because it keeps her a bit calmer and allows her to get out of bed. (AR 49-50.) Going to sleep is very hard for her. (AR 50.) She used to go to sleep at 5:00 a.m., but now with the medication she goes to sleep around 1:00 a.m. or 2:00 a.m. (AR 50.) Her daughter and husband want her to be the person that she used to be. (AR 56.) Plaintiff is unable to hug her daughter and husband. (AR 56.) She does not want her grandchildren who are 18 and 20 to know what is wrong with her, but they know that she is not the same anymore. (AR 58.)

Vocational Expert ("VE") Jose Shapiro also testified at the hearing. (AR 61-67, 70-71.) The VE testified that Plaintiff's work in the past 15 years is a financial institution manager, DOT code 186.167-086, sedentary, skilled, and SVP 8, and credit and collection manager, DOT code 169-167-086, sedentary, skilled, and SVP 8. (AR 62.) Both of these jobs were light as performed. (AR 62.) The ALJ gave the VE a series of hypothetical questions based on an individual with the same vocational profile as Plaintiff.

The ALJ's first hypothetical was for an individual who could perform no more than simple, routine tasks without any contact with the general public and only occasional interaction with coworkers and supervisors. (AR 63.) The individual could not do Plaintiff's past relevant work, but could work as a hand packager, DOT code 920.587-018, medium, unskilled, SVP 2, and 51,000 jobs nationally and 7,200 jobs in California; industrial cleaner, DOT code 381.687-018, medium, unskilled, SVP 2, and 17,600 jobs nationally and 1,800 jobs in California; and stores laborer, DOT code 922.687-058, medium, unskilled, SVP 2, and 27,900 jobs nationally and 2,900 jobs in California. (AR 63-64.) There are no transferrable skills. (AR 64.)

The ALJ's second hypothetical was based on the first hypothetical, but this individual could lift and carry up to 50 pounds occasionally and 25 pounds frequently, and stand and walk for 6 hours, sit for 6 hours. (AR 64-65.) This individual could not do any of Plaintiff's past relevant work, but could do the three jobs that the VE gave for the first hypothetical. (AR 65.)

The ALJ's third hypothetical was based on the second hypothetical, but this individual also would be off task 5 percent of the work day one to two times a week and could lift and carry 20 pounds occasionally and 10 pounds frequently. (AR 65.) This individual could not do any of

Plaintiff's past relevant work, but could work as a bottle packer, DOT code 920.685-026, light, unskilled, SVP 2, and 10,300 jobs nationally and 1,200 jobs in California; housekeeping cleaner, DOT code 323.687-014, light, unskilled, SVP 2, and 228,000 jobs nationally and 25,000 jobs in California, and can filling and closing machine tender (cannery job), DOT code 529.685-282, light, unskilled, SVP 2, and 27,800 jobs nationally and 3,200 jobs in California. (AR 65-66.) There are no transferable skills. (AR 70-71.)

The ALJ's fourth hypothetical was based on the first and second hypotheticals, but with the restriction of being off task 5 percent of the time 1 to 2 times a week. (AR 66.) The VE testified that the response to the first and second hypotheticals would still be the same. (AR 66.)

The ALJ's fifth hypothetical was based on the third hypothetical, but with the restriction of being off task 10 percent of the work day. (AR 66-67.) There is no work that this individual could perform. (AR 67.)

### B. ALJ Findings

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.
- Plaintiff has not engaged in substantial gainful activity since March 23, 2010, the alleged onset date.
- Plaintiff has the following severe impairments: major depressive disorder and panic disorder with agoraphobia.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can perform simple repetitive tasks without any contact with the general public, and only occasional interaction with coworkers and supervisors.
- Plaintiff is unable to perform any past relevant work.
- Plaintiff was born on September 19, 1956, and was 53 years old, which is defined as

1        an individual of advanced age, on the alleged disability onset date.

- Plaintiff has at least a high school education and is able to communicate in English.
- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability, as defined in the Social Security Act, from March 23, 2010, through the date of the decision.

(AR 12-23.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006)). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by improperly rejecting the opinion of Dr. Mary Sadlek, her treating physician. Plaintiff is only challenging the ALJ's rejection of Dr. Sadlek's

opinion regarding Plaintiff's mental impairments. Defendant counters that the ALJ gave multiple proper reasons to reject Dr. Sadlek's opinion.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Id.

The ALJ found that:

> Records of Mary Arsala Sadlek, M.D., revealed complaints of depression and anxiety. Improvement with medications was noted (Exhibit 2F, p. 9). In March 2013, the claimant was still depressed and had no energy, but could not remember if she was taking her medications as prescribed, and was not exercising (Exhibit 4F, p. 2). Dr. Sadlek's records note the claimant moved from a rental and was doing a lot of cleaning with chemicals in April 2013. She suffered a rash that was diagnosed as "contact dermatitis" (Exhibit 7F). These records reveal very little in the way of objective findings, but merely seem to report the claimant's subjective complaints.
>
> Mary Sadlek, M.D., completed a Physical Residual Functional Capacity Medical Source Statement dated April 28, 2014 (Exhibt 5F). Dr. Sadlek notes the claimant's diagnoses as major depression and chronic anxiety, with an inability to concentrate and problems sleeping. She notes the claimant is unable to hold a conversation (Exhibit 5F, p. 2).
>
> Dr. Sadlek reports the claimant could lift and carry 20 pounds occasionally and

9

frequently less than 20 (Exhibit 5F, p. 3). The undersigned accords no weight to this contention, as there is nothing physically limiting revealed in the medical evidence of record, or in Dr. Sadlek's treatment notes.

Dr. Sadlek reports the claimant would be able to perform a job for 50% or less of the time, and is unable to work due to mental problems rather than physical ones (Exhibit 5F, p. 5).

In a Mental Residual Functional Capacity Medical Source Statement dated April 28, 2014, Dr. Sadlek noted no severe limitations in any area of mental functioning per the check-box form (Exhibit 6F, p. 3). She notes the claimant would be off task 10% of the day due to symptoms, and would be absent from work 5 days or more per month (Exhibit 6F, p. 4).

The undersigned accords some limited weight to these assessments as it does reveal the claimant's conditions are severe and cause some functional limitations regarding concentration, persistence, pace and social interaction. Nevertheless, there is very little in the treatment notes to support Dr. Sadlek's opinion. The opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. The doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness.

(AR 18.)

The Court addresses two of the ALJ's reasons together because they are related: that there is very little in the treatment notes to support Dr. Sadlek's opinion and that Dr. Sadlek did not address the fact that her own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if Plaintiff were in fact disabled. (AR 18.) Plaintiff asserts that because Dr. Sadlek treated Plaintiff for close to six years, the longitudinal nature of the relationship belies the ALJ's assertion that there is little in the treatment notes. Plaintiff contends that the function of the medical record is to promote communication and record keeping for the health care personnel and not to provide evidence of disability determinations. Plaintiff argues that the ALJ was impermissibly playing doctor when she found that Dr. Sadlek's reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if Plaintiff were in fact disabled. However, it is clearly established that the ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

While Dr. Sadlek's treatment notes state that Plaintiff has depression and anxiety, numerous treatment notes indicate that Plaintiff exhibited normal judgment, orientation,

memory, and mood/affect. (AR 302-19, 360-62, 382-83.) The "psych areas" of the progress notes include checkboxes for judgment, orientation, memory, and mood/affect. (Id.) None of Dr. Sadlek's treatment notes indicate any abnormal findings for judgment, orientation, memory, and mood/affect. (Id.) As the ALJ recognized, most of Dr. Sadlek's records reveal very little in the way of objective findings and merely seem to state Plaintiff's subjective complaints of depression and anxiety. (AR 18, 302-19, 360-62, 382-83.)

On May 4, 2010, Dr. Sadlek marked that Plaintiff had normal orientation and it appears that she may have marked that Plaintiff had normal judgment. (AR 311.) There were no abnormal psych findings. (AR 311.) On June 23, 2010, and May 23, 2012, Dr. Sadlek noted that Plaintiff had normal judgment, orientation, memory, and mood/affect. (AR 308, 362.) On April 19, 2011, Dr. Sadlek marked that Plaintiff had normal mood/affect, but she did not mark anything for the other psych areas. (AR 304.) On September 8, 2011, Dr. Sadlek marked that Plaintiff had normal judgment and orientation, but she did not mark anything for memory and mood/affect. (AR 302.) On November 29, 2010, and March 19, 2013, Dr. Sadlek noted that Plaintiff had normal judgment, orientation, and mood/affect, but she did not mark anything for memory. (AR 305, 360.) On March 25, 2010, April 14, 2010, May 10, 2010, May 21, 2010, July 23, 2010, May 3, 2011, August 24, 2012, April 24, 2013, and May 13, 2013, Dr. Sadlek did not mark anything for judgment, orientation, memory, and mood/affect. (AR 303, 307, 309, 310, 312, 314, 361, 382, 383.)[4]

Plaintiff is correct that an ALJ cannot "ignore medical evidence or substitute his own views for uncontroverted medical opinion." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). However, here the ALJ did not substitute her own views for uncontroverted medical opinion. As discussed in further detail below, the ALJ gave some weight to the opinions of Mark Berkowitz, Psy.D. and Irwin Matus, Ph.D., state agency consultants, because they are generally consistent with the overall evidence of record. (AR 19.)

Although Dr. Sadlek treated Plaintiff for close to six years, there is little in Dr. Sadlek's

---

[4] The Court also notes that Dr. Sadlek's treatment notes prior to the alleged onset date did not indicate any abnormal findings in the psych areas. (AR 315-19.)

11

treatment notes to support her opinion and Dr. Sadlek did not address the fact that her reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if Plaintiff was disabled. Therefore, these are specific and legitimate reasons supported by substantial evidence for giving limited weight to Dr. Sadlek's opinion.

The ALJ also gave only limited weight to Dr. Sadlek's opinion because the opinion "is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." (AR 18.) Plaintiff argues that Dr. Sadlek provided a detailed assessment of multiple work-related functions. Plaintiff cites to Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014), for the proposition that a check-box form should not be rejected where it is based on significant experience with the plaintiff and the form is supported by numerous records. Defendant argues that the ALJ properly concluded that Dr. Sadlek's opinion was conclusory because Dr. Sadlek's opinion consisted mostly of checking the boxes.

Dr. Sadlek stated in the physical residual function capacity medical source statement that Plaintiff is diagnosed with major depression and chronic anxiety. (AR 371.) She stated that Plaintiff's symptoms are "depressed, unable to concentrate, unable to sleep, [and] gets very anxious." (AR 371.) She said that the most significant clinical findings and objective signs are depressed mood and the fact that Plaintiff is unable to hold a conversation. (AR 371.) Dr. Sadlek said that Plaintiff's limitations lasted since the date Plaintiff claims she could no longer work, but Dr. Sadlek did not fill in the date. (AR 371.) Dr. Sadlek did not indicate what her opinion was based on. (AR 374.)

In the mental residual functional capacity medical source statement, Dr. Sadlek said that Plaintiff's prognosis is guarded, but did not state anything for the DSM-IV Multiaxial Evaluation. (AR 376.) Dr. Sadlek said that Plaintiff's limitations lasted since the date Plaintiff claims she could no longer work, but Dr. Sadlek did not fill in the date. (AR 376.) All of the areas of mental abilities do not preclude Plaintiff from work or would only preclude performance for 5% of an 8-hour work day. (AR 376-78.) When considering Plaintiff's limitations in combination, Dr. Sadlek found that Plaintiff would be off task 10% of the work day. (AR 378.) Dr. Sadlek found that Plaintiff is likely to be absent from work for 5 days or more a month and

unable to complete an 8-hour work day 5 days or more a month. (AR 378.) Dr. Sadlek noted that Plaintiff would be expected to perform a job less than 50% as efficiently as an average worker. (AR 378.) Dr. Sadlek indicated that Plaintiff has reduced intellectual functioning because she is unable to hold a simple conversation. (AR 379.) Dr. Sadlek did not state Plaintiff's IQ or GAF. (AR 379.) In the additional comments and remarks section, Dr. Sadlek wrote that "[Plaintiff] was a very intelligent and hard working lady, but she is not able to work at all due to major depression." (AR 379.) Dr. Sadlek indicated that the opinion was based on Plaintiff's history and medical file as well as progress and office notes. (AR 379.) The Court notes that Dr. Sadlek did not indicate that the opinion was based on psychological evaluations and reports/opinions.[5] (AR 379.)

---

[5] The Court notes that Dr. George Rowell sent his reports (AR 402-57) to Dr. Sadlek, and therefore, Dr. Sadlek would have had Dr. Rowell's reports when she completed the medical source statements. Dr. Rowell is a medical doctor in psychiatry who examined Plaintiff for Liberty Mutual Insurance and the ALJ recognized that Dr. Rowell had a treating relationship with Plaintiff. (AR 18, 402-57.) However, Dr. Sadlek does not indicate that she based her opinion on Dr. Rowell's reports or the testing that Dr. Rowell conducted. (AR 374, 379.) She only indicated that her opinion in the mental residual functional capacity statement was based on Plaintiff's history and medical file and progress and office notes. (AR 379.)

Even if Dr. Sadlek considered Dr. Rowell's evaluations or opinions part of the medical file and based her opinion on them, she still did not complete many questions in the residual functional statements, such as the DSM-IV Multiaxial Evaluation, the date Plaintiff claims she could no longer work, an explanation of how the behavioral condition exacerbates Plaintiff's experience of pain or other physical symptoms, Plaintiff's GAF and the tests used to determine the GAF, and frequency and length of contact. (AR 371-74, 376-79.) Therefore, there still would be substantial evidence to support the ALJ's finding that Dr. Sadlek only provided very little explanation of the evidence relied on in forming that opinion.

Further, the Court notes that Dr. Rowell's October 7, 2010 mental status examination revealed that Plaintiff had no evidence-based behavior implying disturbances in cognitive dysfunction and her intellectual functions were average. (AR 436.) She had intact insight and judgment, she does not have a behavioral disturbance, her social presentation was appropriate, and her memory was good except for her delayed recall with a 5-minute delay. (AR 435-37.) She did not have delusions, but persecutory ideation was pronounced. (AR 436.) Her overall mood spoke of anxiety and depression and her affect was non-specific. (AR 435-36.) Plaintiff's speech was normoactive, her language was connected syntactically, and she voiced an abundance of details that were developed into premises from which her conclusions followed. (AR 435.) During her October 22, 2010 office visit, she had marked anxiety. (AR 405.) Therefore, Dr. Rowell's evaluations do not support Dr. Sadlek's statement that one of the two of Plaintiff's most significant clinical findings and objective signs is that she is unable to hold a conversation.

In addition, the ALJ found that Dr. Rowell relied quite heavily on the subjective report of symptoms and limitations provided by Plaintiff. (AR 18, 402-57.) Dr. Rowell's psychological testing revealed that Plaintiff had a severe level of anxiety on the Beck Anxiety Self Rating Scale and an extreme level of depression on the Beck Depression Inventory, which were based on her endorsements and volunteered information. (AR 438-39.) Plaintiff also volunteered information for the index of somatic problems and the incomplete sentence blanks examination. (AR 439-40.) In addition, as the ALJ noted, Plaintiff's increased symptoms during her visits with Dr. Rowell were largely acute in connection with having her deposition taken. (AR 18, 403, 405-06, 411-12, 452-53.)

As discussed above, Dr. Sadlek's treatment notes do not support her opinion. Dr. Sadlek did not fill in the information in multiple sections of the mental residual functional capacity medical source statement that could have supported her opinion, such as the DSM-IV Multiaxial Evaluation, IQ scores, GAF scores, and the frequency and length of contact information. (AR 376.) Dr. Sadlek also did not provide much detail for what her opinion was based on in the physical residual function capacity medical source statement. (AR 371-74.) Therefore, there is substantial evidence to support the ALJ's finding that Dr. Sadlek's opinion is quite conclusory and provides very little explanation of the evidence relied on in forming that opinion.

Additionally, the ALJ gave some weight to the opinions of Dr. Berkowitz and Dr. Matus as they are generally consistent with the overall evidence in the record. (AR 19.) On October 15, 2012, Dr. Berkowitz opined that Plaintiff had an affective disorder and anxiety-related disorder that caused moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation, each of extended duration. (AR 80.) He opined that Plaintiff would be moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (AR 82.) He also opined that Plaintiff would be moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 82.) He found that there was no evidence of limitation in Plaintiff's ability to get ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR 82.) Dr. Berkowitz found that Plaintiff is able to persist at tasks that can be learned in up to one month on the job with occasional public contact. (AR 83.) On June 17, 2013, Dr. Matus affirmed Dr. Berkowitz's findings. (AR 101-04.)

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the opinions of Dr.

Berkowitz and Dr. Matus are consistent with other independent evidence in the record and provide substantial evidence to support the ALJ's decision.

Therefore, the Court finds that the ALJ proffered specific and legitimate reasons to give limited weight to the opinion of Dr. Sadlek that are supported by substantial evidence in the record.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ did not err in addressing the opinion of Plaintiff's treating physician, Dr. Sadlek.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Jessie Lira. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __**June 29, 2017**__

UNITED STATES MAGISTRATE JUDGE